**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Stanley M. Newton

    v.                                    Civil No. 10-cv-585-SM

Michael J. Astrue, Commissioner
Social Security Administration


**REPORT AND RECOMMENDATION**


Pursuant to 42 U.S.C. § 405(g), Stanley Newton moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Commissioner, in turn, moves for an order affirming his decision. For the reasons that follow, I recommend that the decision of the Commissioner, as announced by the Administrative Law Judge ("ALJ"), be affirmed.


**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Commissioner] has committed a legal or

factual error in evaluating a particular claim.'"  Manso-Pizarro

v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,

917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,

730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more

than [a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)).  But, "[i]t is the responsibility of the [Commissioner]

to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

### Background

The parties have submitted a Joint Statement of Material Facts, document no. 16.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Newton's relevant employment history includes work managing a pizza shop, delivering pizzas, testing servers, installing cable, repairing computers, and installing signs.  In May of 2008, when Newton was working for his brother as a sign

installer, he was admitted to Lakes Region General Hospital

("LRGH"), complaining of fever and coughing up blood.  After he

was discharged, he returned to the emergency room, where a chest

x-ray showed a significant worsening of his condition.  After

spending time in the intensive-care unit at LRGH, Newton was

transferred to Massachusetts General Hospital.  There, he saw

Dr. John Niles, a nephrologist,[1] who characterized Newton, on

June 12, as having the following problem:

> ANCA vasculitis[2]/Wegener's granulomatosis[3]
>
> - admitted 6/2/08 with alveolar hemorrhage, anti-PR3 ANCA and glomerulonephritis
>
> - treated with solumerdrol, plasma exchange and pulse cyclophosphamide
>
> - Hemorrhage clearing, but creatinine has crept up from .09 to 2.23 – now holding

---

[1] Nephrology is "[t]he branch of medical science concerned with medical diseases of the kidneys." Stedman's Medical Dictionary 1290 (28th ed. 2006).

[2] Vasculitis is an "inflammation of a blood or lymph vessel." Dorland's Illustrated Medical Dictionary 2054 (31st ed. 2007).  Pulmonary vasculitis includes "any of numerous inflammatory conditions of the walls of the pulmonary vessels; the most common ones are allergic granulomatous angiitis and Wegener granulomatosis." Id. at 2055.

[3] Wegener granulomatosis is "a disease occurring mainly in the fourth and fifth decades that is characterized by necrotizing granulomas, vasculitis, and ulceration of the upper respiratory tract, with purulent rhinorrhea and nasal obstruction, and sometimes with otorrhea, hemoptysis, pulmonary infiltration and cavitation, and fever." Stedman's, supra, 832.

Administrative Transcript (hereinafter "Tr.") 350.  Ten days later, Dr. Niles reported, among other things, that Newton's "[b]reathing feels back to normal," Tr. 354, and that Newton was "[f]eeling well overall," id.  Newton has seen Dr. Niles at least a dozen more times for follow up on his vasculitis.  In the most recent treatment note in the record, dated April 6, 2010, under the heading "PROBLEMS," Dr. Niles reported:

    1) ANCA vasculitis
        a)   Feeling fine
        b)   No epistaxis (rare speck of blood on rare
             occasion)., Hernoptysis.
        c)   Now on azathioprine and prednisone
    2) CKD[4]
        a)   Has been stable.
        b)   Baseline now [roughly] 1.4
    3) Feeling well overall

Tr. 479.  Later in the same note, Dr. Niles recorded the following impression:

    1) ANCA vasculitis
        a)   Clinically quiet
        b)   ANCA has still been high
        c)   Now on rituxan as well.
        d)   Now on azathioprine and off cyclophosphamide
             i)   (flared the last time we tried this).
    2) Pulmonary fibrosis
        a)   Symptomatically resolved
    3) CKD – mild

Tr. 480.

---

    [4] At his hearing, Newton said he did not know what CKD was. See Tr. 21.  The record is not very illuminating on this point, and the court will not hazard a guess.

5

In September of 2008, at the request of a state-agency medical consultant, Newton received a consultative examination directed to assessing his pulmonary function.  In the resulting report, Dr. Lusine Melik-Adamyan noted the following impression:

> This is a limited study since lung volumes were not measured.  There is no evidence for obstructive lung disease.  Restriction cannot be ruled out.  Upper airway obstruction can not be ruled out, suggest repeat spirometry if clinically indicated.

Tr. 279.

In his June 12, 2008, treatment note, under the heading "SOCIAL HISTORY," Dr. Niles reported: "Works part time for brother as laborer."  Tr. 350.  The notation "Works for brother" appears under the social-history heading in fourteen more treatment notes by Dr. Niles written between June 23, 2008, and April 6, 2010.  See Tr. 303, 310, 315, 354, 360, 364, 369, 373, 380, 382, 460, 466, 473, 479.  In a December 10, 2009, treatment note, under the heading "PROBLEMS," Dr. Niles reported:

> 2) Fibrosis
>     a)   Exercise tolerance much improved
>     b)   Working manual labor

Tr. 309.  Similar notations, indicating both an improved exercise tolerance and that Newton was working manual labor, appear in two more treatment notes, written on January 5 and March 11, 2009.  See Tr. 314, 320.  Those notations do not,

6

however, appear in any of Dr. Niles' eight subsequent treatment notes.

At Newton's hearing, the ALJ asked Newton to confirm that he had last worked in December of 2007. Shortly thereafter, the following exchange took place between the ALJ and Newton:

> Q   Now the file and Dr. Niles' notes consistently reflect that you're working for your brother.
>
> A   I have not worked since I was ill. I notice that he, John [Newton's counsel] pointed that out to me too and I said, I tried to help him for like less than a week after I felt I was better, and we both decided I wasn't being productive at all. I don't know if he wrote that when I was still in the hospital, but I may have given him the impression I was planning to go back to doing that [working for his brother], I just never did.
>
> Q   It notes that you were working part time on June 12th of '08.
>
> A   June 12th of '08 I was still, I was checked out of Mass General June 13th. Pretty sure it was 13. Yeah.[5]

Tr. 22-25. Newton's counsel also asked him about his work activities after the onset of his alleged disability:

> Q   Did you make any attempts to try and go back and work for your brother after May of 2008?
>
> A   Yes. I'm thinking October 2008, he had to put these four foot concrete boundaries on a road in Newport, which was digging a hole four feet deep and

---

[5] Indeed, Dr. Niles' treatment note of June 23, 2008, states that Newton was "[d]ischarged 10 days ago." Tr. 354.

putting a concrete thing[ ] that weigh[s] like 200
pounds in the hole and the[n] lining them up.  I went
with my nephew, he just did all the work pretty much.
I could pick up, I could pick up the end of the thing
and walk it over a little ways and set it down, but
before we'd put it in I'd have to rest again.  Because
he'd have to, I'd have to guide it while he put it in.
But I'd try to help out a little.  I thought I was
doing good until my brother showed up and he said,
you've got to stop doing this, because I'm huffing and
puffing and looking a whole lot worse than I used to,
I guess.

Tr. 30.

In November of 2008, state-agency medical consultant Joseph
Cataldo completed a Physical Residual Functional Capacity
("RFC") assessment on Newton.  See Tr. 270-77.  He opined that
Newton could: lift and/or carry twenty pounds occasionally and
ten pounds frequently; stand and/or walk and sit, with normal
breaks, for about six hours in an eight-hour workday; and could
push and/or pull without limitation.  Those exertional
limitations are consistent with light work.  See 20 C.F.R. §§
404.1567(b), 416.967(b).  Dr. Cataldo reported that Newton could
occasionally balance, stoop, kneel, crouch, crawl, and climb
ramps, stairs, ladders, ropes, and scaffolds.  He found no
manipulative, visual, communicative, or environmental
limitations.

In July of 2009, Dr. Niles, a treating physician, completed
a Medical Source Statement of Ability to do Work-Related

Activities (Physical) on Newton.  See Tr. 294-99.  Dr. Niles

reported that Newton could lift and carry 51 to 100 pounds

occasionally, 21 to 50 pounds frequently, and 11 to 20 pounds

continuously.  That capacity for lifting and carrying is

consistent with heavy work.  See 20 C.F.R. §§ 404.1567(d),

416.927(d).  Dr. Niles also found that Newton could sit for

eight hours at one time, stand or walk for six hours at a time,

and could sit, stand, or walk for eight hours in an eight-hour

workday, and he found no limitation on Newton's ability to use

his hands or feet.  With regard to postural activities, Dr.

Niles found that Newton could continuously balance and climb

stairs and ramps, could frequently stoop and kneel, and could

occasionally crouch, crawl, and climb ladders or scaffolds.[6]

Finally, with regard to environmental limitations, Dr. Niles

determined that Newton could continuously operate a motor

vehicle, could frequently tolerate exposure to moving mechanical

parts, humidity, wetness, dust, odors, fumes, pulmonary

irritants, and vibrations, and could occasionally tolerate

exposure to unprotected heights, extreme cold, and extreme heat.

    At Newton's hearing, the ALJ heard testimony from a

vocational expert ("VE").  In response to a hypothetical

---

[6] According to Dr. Niles, those postural limitations
resulted from both Newton's obesity and his deconditioning.

question based on Dr. Cataldo's RFC assessment, the VE testified that Newton would be able to perform his past work delivering pizzas, managing a pizza shop, and repairing computers.  The ALJ further testified that if Newton had the RFC ascribed to him by Dr. Cataldo, he would be able to work as a mail clerk, as a currier, and as an assembler.  In response to a hypothetical question based on Dr. Niles' RFC assessment, the VE testified that Newton would be able to perform all of his prior work. Newton's counsel followed up:

> Q   Mr. Hall, in sitting through the hearing today and receiving the testimony of Mr. Newton with regard to shortness of breath, would those limitations have any effect on your opinion as he discussed the limitation to the past work that he's done?

> A   Yes, sir.  The more exertionally demanding jobs such as the sign installer, the cable installer, the pizza delivery type jobs, I believe that what I heard in testimony as being credible would have a negative impact upon those type jobs.  The lesser demanding, physically, jobs, I believe that would remain appropriate for such a hypothetical person.

Tr. 35-36.  The VE then went on to clarify that shortness of breath would preclude pizza-delivery work and work as a currier, but not work as a mail clerk.

After the hearing, the ALJ issued a decision that included the following relevant findings of fact and conclusions of law:

3.  The claimant has the following severe impairments:
Wegener's Granulomatosis and obesity (20 C.F.R. §§
404.1520(c) and 416.920(c)).

.  .  .  .

4.  The claimant does not have an impairment or
combination of impairments that meets or medically
equals one of the listed impairments in 20 C.F.R. Part
404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),
404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

.  .  .  .

5.  After careful consideration of the entire record,
I find that the claimant has the residual functional
capacity to perform a full range of heavy work except
he is unable to crouch, crawl, or climb, ropes,
ladders, and scaffolds more than occasionally.
Nonexertionally, he must avoid unprotected heights,
extreme heat and cold, and moderate exposure to dust,
fumes, gases, and other pulmonary irritants.

.  .  .  .

6.  The claimant is capable of performing past
relevant work as a cable installer, computer repair
technician, fast food worker, food service manager,
server tester, and sign installer.  This work does not
require the performance of work-related activities
precluded by the claimant's residual functional
capacity (20 C.F.R. §§ 404.1565 and 416.965).

Tr. 10, 13.


### Discussion

In a somewhat diffuse memorandum, Newton defines the issue

in this case as follows:

> The general issue is whether the decision of the
> Commissioner, by the ALJ, is supported by substantial

11

> evidence of the record, specifically, did the ALJ err
> by finding a residual functional capacity for the
> plaintiff.  The plaintiff contends the ALJ erred on
> that count.

Cl.'s Mem. of Law (doc. no. 12-1), at 4.  After framing the

issue generally, Newton hints at, but does not fully develop

arguments that the ALJ: (1) did not properly consider his severe

impairment of obesity or his symptom of shortness of breath; and

(2) made a faulty credibility determination.  In addition, even

though the ALJ concluded his analysis by determining that Newton

was capable of his past relevant work, and thus never reached

the question of whether there were other jobs he could do,

Newton appears to argue that the ALJ erred by determining that

there are a significant number of mail-clerk jobs in this region

– a determination he never made.  Based on its reading of

Newton's memorandum, the Commissioner identifies the following

issues:

> A.   Whether substantial evidence supports the
> ALJ's residual functional capacity assessment.
>
> B.   Whether substantial evidence supports the
> ALJ's credibility Finding.
>
> C.   Whether substantial evidence supports the
> ALJ's finding that Plaintiff could perform his past
> relevant work.

Comm'r's Mem. of Law (doc. no. 15-1), at 1.

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The only question in this case is whether Newton was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A) (setting out a similar definition of disability for determining eligibility for SSI benefits). Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

13

which he lives, or whether a specific job vacancy
exists for him, or whether he would be hired if he
applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also

42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for

determining eligibility for SSI benefits).

To determine whether a claimant is disabled for the purpose

of determining eligibility for either DIB or SSI benefits, an

ALJ is required to employ a five-step process.  See 20 C.F.R. §§

404.1520 (DIB) and 416.920 (SSI).

The steps are: 1) if the [claimant] is engaged in
substantial gainful work activity, the application is
denied; 2) if the [claimant] does not have, or has not
had within the relevant time period, a severe
impairment or combination of impairments, the
application is denied; 3) if the impairment meets the
conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

14

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the claimant or other witness; and
> (3) the [claimant]'s educational background, age, and
> work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

### B. Newton's Arguments

As the court has already suggested, Newton's argument is
not as easy to follow as it might be.  At the outset, he frames
his disagreement with the ALJ's decision in terms of the RFC
assessment, but then he veers into criticizing the ALJ's step-
five determination, notwithstanding the fact that the ALJ
concluded his analysis at step four, by determining that Newton
was capable of performing his past relevant work.  Along the
way, Newton tosses off several grossly undeveloped one- or two-
sentence criticisms of the ALJ's decision.  Beyond that, he
asserts, contrary to the record, that all of his past work,
including pizza delivery, was performed at the "heavy"
exertional level.  See Cl.'s Mem. of Law (doc. no. 12-1), at 2;

Tr. 32-33.  Similarly, he asserts that in response to the ALJ's
second hypothetical, the VE identified only one job he could do
when, in reality, the VE testified that Newton could perform
about half of his past relevant work, i.e., the jobs involving
lighter exertion, which include managing a pizza shop, testing
servers, and repairing computers.  See Tr. 36.  In any event,
rather than trying to follow the various loose threads that make
up Newton's argument, the court considers two aspects of the
ALJ's RFC assessment, his determination of Newton's exertional
limitations and his credibility assessment.[7]

### 1. Exertional Limitations

The ALJ determined that Newton had the capacity to perform
a full range of heavy work, with certain postural and
environmental limitations.  That determination is supported by
substantial evidence in the record consisting of a statement by
Newton's own treating physician.  Newton does not say why Dr.
Niles' opinion is not entitled to deference, nor could he
plausibly make an argument to that effect.  See 20 C.F.R. §§

---

[7] Because Newton's only argument concerning the ALJ's
consideration of his obesity is that it contributes to his
shortness of breath, there is no need to consider those two
issues separately, presuming that Newton has even presented his
obesity argument in a way that obligates the court to consider
it.

404.1527(d)(2), 416.927(d)(2) (describing the so-called
"treating-physician rule").  In addition to being a treating
physician of long standing at the time he gave his opinion, Dr.
Niles gave his opinion approximately eight months after Dr.
Cataldo, a non-examining, non-treating source, gave an opinion
limiting Newton to light work.  The reliability of Dr. Niles'
opinion could only have been enhanced by his access to an extra
eight months' worth of medical evidence.  In sum, the exertional
limitations in the ALJ's RFC are supported by substantial
evidence in the record.

### 2. Credibility

Newton also finds fault with the ALJ's credibility
assessment.  Credibility, of course, is not a free-standing
issue, but comes into play when an ALJ is obligated to address a
claimant's statements about his or her symptoms.  In turn, the
ALJ must evaluate those statements when determining a claimant's
RFC.

The starting point for a credibility analysis is
identifying the symptom(s) at issue.  Here, the relevant
symptoms are shortness of breath and general fatigue.  In the
background section of his memorandum, Newton mentions his
compromised immuno support system, which, he says, makes him

susceptible to catching colds from others.  But, in his actual

argument, he limits his discussion to shortness of breath and

general fatigue.  Accordingly, the court limits its

consideration to those symptoms.

At his hearing, in response to a question from the ALJ,

Newton testified:

> I can't really sustain any activity for long
> without taking a break.  My, it seems like I'm always
> trying to catch my breath.  I guess there's damage to
> my lungs, but to me it's just, I have to sit down and
> rest.  If I push past that point I'll get dizzy and
> get a headache, and have to sit down for longer.  So
> that's my major issue with doing a lot, or doing
> anything for any sustained amount of time.

Tr. 20.  Subsequently, the following exchange took place between

Newton and his counsel:

> Q    What type of those symptoms are you still
> experiencing?
>
> A    The breathing is still a little off.

Tr. 25.

In his decision, the ALJ framed the credibility issue this

way:

> Statements contained in the medical evidence file
> indicate and [statements] elicited during [the]
> hearing indicate that the claimant's symptoms worsen
> with activities.  Functionally, he testified to having
> difficulty lifting heavy objects, is no longer able to
> walk long distances, and that physical activity
> worsens his symptoms.

Tr. 12.  The ALJ concluded his credibility discussion by

stating: "because the claimant has failed to establish a

correlation between his allegations and the objective medical

evidence, I find the claimant partially credible, but not to the

extent alleged."  Tr. 12.  The ALJ's credibility assessment is

somewhat curious but, ultimately, it does not undermine the

validity of his decision.

With regard to the context in which credibility assessments

are made, Social Security Ruling ("SSR") 96-7p

> outlines a specific staged inquiry that consists of
> the following questions, in the following order: (1)
> does the claimant have an underlying impairment that
> could produce his or her symptoms?; (2) if so, are the
> claimant's statements about his or her symptoms
> substantiated by objective medical evidence?; and (3)
> if not, are the claimant's statements about those
> symptoms credible?

Guziewicz v. Astrue, No. 10-cv-310-SM, 2011 WL 128957, at *5

(D.N.H. Jan. 14, 2011) (citing SSR 96-7p, 1996 WL 374186, at *2

(S.S.A. 1996)).  Here, while it is not entirely clear, the ALJ

appears to have determined that Newton did not have an

impairment that "could reasonably be expected to produce the

pain or other symptoms alleged."  Tr. 12.  If, indeed, the ALJ

made that determination, then he had no need to assess Newton's

credibility in the first instance, and any discussion of that

issue is mere surplussage.

If, however, the ALJ had reason to reach the third step in the SSR 96-7p analysis, there is a good argument to be made that the record does not include evidence that a reasonable mind could accept as sufficient to support the conclusion that Newton has "a history of unreported work activity."  Tr. 12.[8]  But, the court need not reach that issue, because even if the ALJ's credibility assessment is not supported by substantial evidence in the record, his ultimate decision still is.

At the hearing, the VE testified, in response to a question from Newton's counsel, that if he were to fully credit Newton's statements about shortness of breath, he would find Newton capable of performing his past relevant work managing a pizza shop, testing servers, and repairing computers.  While Newton testified generally that he believed himself to be incapable of doing any of his former jobs, he testified specifically only about his ability to meet the physical demands of installing signs, installing cable, and delivering pizzas.  See Tr. 30-31. He offered no specific testimony about his physical ability, or inability, to manage a pizza shop, test servers, or repair

---

[8] The only evidence of "unreported work activity" consists of Dr. Niles' notations which, necessarily, are based on Newton's reports to him.  That is relatively weak evidence, being that it takes the form of Dr. Niles' reports of Newton's reports, rather than being direct evidence of Newton's work activities.

computers. See Tr. 31. Accordingly, even without substantial evidence in the record to support the ALJ's step-four determination in its entirely, i.e., that Newton had the RFC to perform all of his past relevant work, there is substantial evidence in the record that is all but unopposed supporting a determination that Newton was capable of performing three of his former jobs. That provides a sufficient basis for the ALJ's determination that Newton was not disabled.

## Conclusion

Because the ALJ has committed neither a legal nor a factual error in evaluating Newton's claim, see Manso-Pizarro, 76 F.3d at 16, I recommend that: (1) Newton's motion for an order reversing the Commissioner's decision, document no. 12, be denied; and (2) the Commissioner's motion for an order affirming his decision, document no. 15, be granted.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 268 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st

Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


March 16, 2012

cc:  John A. Wolkowski, Esq.
     Gretchen Leah Witt, Esq.